Nicolás Betancourt, Plaintiff and Appellant, *v.* Saving and Loan Fund Association of the Employees of the Insular Government, Defendant and Appellee.

No. 7804.  Argued February 1, 1939.—Decided June 9, 1939.

*Virgilio Brunet,* for Appellant;  *Carlos H. Juliá,* for Appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

Nicolás Betancourt filed suit against the Savings and Loan Fund Association of the Employees of the Insular Government, claiming $1,800 of insurance for permanent incapacity.

He alleged that being employed as a telegraph operator by the Insular Government, on June 7th, 1933, he joined the defendant Association according to law, taking out the second class insurance.  That on the following August 13th, he had a cerebral hemorrhage which resulted in hemiplegia of the right side, and on the following September 30th he requested from the Association the benefits provided by said law for the members physically unable to work due to total and permanent incapacity; that he was examined by Doctors Francisco J. Mejías on September 30th, 1933, and M. Morales on June 21st, 1934, Miguel Veve on July 29th, 1935, and José Garrido on February 25th, 1936, and all of said doctors certified that he was totally and permanently incapacitated

for work; that the defendant has refused to pay him the insurance amounting to $1,800.

The defendant answered. It admitted certain facts and denied that the complainant was physically incapacitated to work. As special defense it alleged that the complainant had paid his dues for the savings and insurance fund until December 16th, 1933, when he was given an indefinite license without salary; that when he ceased as an employee he had in the savings fund the amount of $10.36, and he owed $31.20 of a loan for $39 which he had made with the Association; that having requested his insurance for permanent physical incapacity on September 22, 1933, the doctor of the Association, Dr. E. García Cabrera, hospitalized him in order to make certain necessary examinations. That Dr. Bernabe examined his eye sight and that both doctors reached the conclusion that the complainant was not nor had been totally or permanently incapacitated to carry out the duties of his position; that later the plaintiff went to the School of Tropical Medicine where Dr. J. A. Pons who examined and treated him, reached the same conclusion as Dr. García Cabrera; that the complainant stopped paying his dues for insurance and savings from the time that he took vacations without pay for more than three months without stating that he wished to continue his insurance, having therefore lost his right to the same, so that he may only ask that his savings account be liquidated and the one-half of the dues for death which he has paid be returned to him; that from said liquidation he would have had no balance since he only had $10.36 in the savings account and he owed on his loan $31.20.

The case went to trial and the district court found for the defendant stating that it did so only because the proper remedy had not been filed which was in its opinion a *mandamus*.

He charges two errors to the court, the first in dismissing the complaint and the second in awarding costs.

In order to correctly understand the question we transcribe from the statement of the case and opinion of the lower court, as follows:

"This is an ordinary suit against the public association called Savings and Loan Fund Association of the Employees of the Insular Government created by Act No. 52 of July 11, 1921, . . . Section 20 as it was amended by Act No. 15 of April 21st, 1927, provides as follows:

" 'From and after the taking effect of this Act, and when one of the members of the Association who has accepted the benefits hereof dies or becomes permanently disabled for the performance of his official duties either through accident or disease, he shall be entitled to insurance as follows: the insurance shall be divided into two classes which shall be known as First and Second Class. Such employees as shall express their willingness to pay monthly the sum of one (1) dollar for each death or disablement shall belong to the first class, and to the second class shall belong such as pay the sum of fifty (50) cents for the said reasons. The President of the Savings and Loan Association of the Employees of the Insular Government of Porto Rico shall serve notice on the heads of the offices and departments of the Insular Government, referred to in Section 2 of this Act, of such death or disablement, and said heads of departments or offices shall order that on making the next pay roll there shall be deducted from the salary of each and every one of the employees of their respective departments or offices who have not waived the benefits of this Act, the sum of one (1) dollar for each member of the First Class and the sum of fifty (50) cents for members of the Second Class whenever the death or disablement of an employee comprised in the First Class shall occur; and when the death or disablement of an employee comprised in the Second Class shall occur, the sum of fifty (50) cents shall be deducted from both the First and Second Class; Provided, That there shall never be deducted from the salaries of Insular Government employees comprised hereunder more than four assessments in any one month.

" 'Whenever there are more than three deaths or cases of disablement in any one month, such assessments shall be paid in subsequent months in the order in which the deaths or disablements occurred.

" 'The Auditor of Puerto Rico shall draw checks for the sum so deducted, in accordance with this Section, in favor of the President of the Savings and Loan Fund Association of the Employees of the

Insular Government of Porto Rico, who shall deduct five (5) per cent of the total amount which he shall cover into the reserve fund of the said institution; and the difference, upon resolution of the Board of Directors, shall be delivered by him to the legal successors in interest of the deceased employees; *Provided, further,* That the Board of Directors is hereby empowered to create a reserve fund which shall be known as "Reserve Fund for Advances" which shall be used for making loans to disabled members and to the beneficiaries of dead members and of those covered by this Act, when such persons would have to await their turn for a longer period than two months to collect the amount of the corresponding insurance. This fund shall be created with twenty (20) per cent of the total monthly income produced by the three (3) per cent discount from the salary of each member covered by Section 2 of this Act. Loans which are made as advances from this fund shall be so granted for a period not greater than that within which the beneficiaries or successors in interest shall receive the total amount of insurance, and the amount thereof shall not exceed 60 per cent of the amount corresponding thereto by reason of the insurance, in the opinion and discretion of the Board of Directors. These advances shall be made upon written application of the interested party, and when there are two or more persons interested in the insurance as beneficiaries, the Board may grant the advance to all of them jointly or separately, in which last case, attention shall be given to such portion as shall pertain to each under the Declaration of Beneficiaries required under Section 3 of this Act. In case that said Declaration of Beneficiaries has not been made, no application for an advance shall be considered until the proper Declaration of Heirs shall have been made and filed with the Board of Directors of the Association. For every advance so made, a deduction of six (6) per cent for annual interest on the amount advanced shall be made, and the amount of the said advance shall be deducted at the time of the liquidation of the corresponding insurance from the total amount of the insurance and shall be credited to the Reserve Fund for Advances created by this Section. When this fund shall exceed such amount as the Board of Directors may believe sufficient to meet the said advances easily, the Board of Directors may suspend the accumulation of funds in the said Reserve Fund for Advances.'

"This Section establishes the procedure to be followed when an employee who has accepted the benefits of the act becomes permanently incapacitated. It is his duty to notify the President of the

Association who in his turn should give notice of this fact to the different heads of departments so that this latter will discount from the next pay roll 50 cents from the salary of each employee, the Auditor of Puerto Rico will then issue a check for the total amount discounted in favor of the President of the Association, and then the President will discount 5 per cent of the total amount of the check to be deposited in the reserve fund of said Association and the difference, by resolution of the Board of Directors shall be delivered to the insured, or his heirs in case of death. The legislative intent that the insurance be paid in the manner provided for by said Section 20 is clear. Nowhere is any obligation imposed upon the defendant as a public institution. The obligation is on the President. The procedure to be followed is a *Mandamus* against this public officer to make him comply with a ministerial duty, as was done in the case of *Muñoz* v. *Ramos*, 39 P.R.R. 366. *Feliciano* v. *López*, 44 P.R.R. 911 and *Feliciano* v. *López*, 48 P.R.R. 515 . . .

"We have not overlooked the cases that hold that an ordinary suit may be filed against mutual benefit insurance associations for the collection of the total amount of the insurance even when in the contract between the association and the insured it was agreed that the insurance would be paid from quotas paid by the members of the association. In all these cases the associations were private and incorporated and the courts based their holdings on that according to the intention of the contracting parties the company bound itself unconditionally by the insurance, and that if the members did not pay their quotas this was a risk which the insurer assumed. In this case the only contract is the law and we repeat the law only imposes the obligation on the President of the Association to notify the different heads of departments of the fact of the physical incapacity of the employee. The intent of the Act is clear in the sense of not binding the association to pay from its general funds but only to pay from the quotas which are discounted from each employee in the pay roll. . . .

". . . . The procedure to be followed is to compel the President of the Association to comply with his ministerial duty. (*Muñoz* v. *Ramos, supra*). We cannot in a case of this nature render a judgment ordering the defendant to pay from its general funds the amount of the insurance claimed.

"Before finishing this opinion we would like to state that during the trial the right of the complainant to the insurance that he claims was clearly shown. The well known doctors who testified, including

the doctor of the association, stated definitely that when the complainant requested the insurance he was totally incapacitated, and under these circumstances we cannot understand how five years later his right is still under discussion. The President of the Association as well as the directors in acting as such are exercising public and governmental functions and they should not in any manner frustrate the beneficial aims of the Act. The only reason that this complaint is dismissed is that the right procedure has not been followed."

The question as to the procedure to be followed in cases of this nature was studied and decided by this court in *Escartín v. Insular Police Commission*, 47 P.R.R. 473. There is no doubt that the rigid rule stated by the judge of the lower court is upheld by the jurisprudence, but this court in considering the reasons pro and contra decided to adopt as it adopted a rule which without violating any rights of the parties at the same time permits a decision on the merits of the case, the same as in a proceeding for *mandamus*, within the broad outlines of an ordinary suit. Our opinion was finally stated as follows:

"After a careful consideration of the matter, we are of opinion that the judgment appealed from must be reversed. The opinion of the Court of Appeals of New Jersey seems to us to be just. The remedy by mandamus is a privilege. Plaintiff could have made use of it and obtained a quicker and more direct decision of her case. She did not do so. She preferred the ordinary action which is broader and slower but this should be no obstacle to have the case decided on its merits by the court. Everything said to the contrary in the Ortiz case, supra, must be understood to be overruled.

We do not prejudge the rights of the parties. What we do decide is that the suit must proceed, and the defendants allowed a reasonable time to plead any defenses they may have in their favor."

We have not been convinced that we should change this rule. It is clear that a judgment should not be rendered ordering the defendant to pay the insurance claimed, but if the court basing itself on the facts alleged which it believes to be true may render the judgment that they themselves pray for, more or less the same which would have been

ordered in a procedure for *mandamus,* that is, ordering the defendant to recognize the right of the complainant to the insurance and its President to make the notification according to law so that the act will be duly complied with until the sum claimed as insurance is delivered to the complainant.

The judgment appealed from should be reversed and another rendered in its stead with the holding above set forth.